**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Tara S. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 25-cv-50246 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Frank Bisignano, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Tara S., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A.      Procedural History**

On August 10, 2021, Tara S. ("Plaintiff") filed a Title II application for disability and disability insurance benefits, alleging disability beginning July 15, 2020. R. 215. Her application was denied initially, and by an Administrative Law Judge ("ALJ") decision dated March 4, 2022. R. 233. Plaintiff sought review and the Appeals Council vacated the hearing decision and remanded the case. R. 240-43. In its remand order, the Appeals Council directed the ALJ to consider Plaintiff's past relevant work, residual functional capacity ("RFC"), and medical source opinions. *Id.*

On October 11, 2023, pursuant to the remand order, ALJ Jessica Inouye held a telephonic hearing. R. 15. Plaintiff appeared, testified, and was represented by counsel. *Id.* At the hearing, an impartial vocational expert, Kimberly Eisenhuth, also testified. *Id.* The ALJ held a supplemental telephonic hearing on March 27, 2024, to obtain additional medical evidence. Plaintiff appeared and was represented by counsel. *Id.* Impartial medical expert, Vladimir Karpitsiky, and impartial vocational expert, Matthew Charles Lampley, also appeared and testified. *Id.*

On July 5, 2024, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits. R. 15-49. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-3. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the

jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [7]. Now before the Court are Plaintiff's motion to reverse or remand the Commissioner's decision [11], the Commissioner's response [13], and Plaintiff's reply [14].

### B. The ALJ's Decision

In her ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2020, the alleged onset date. R. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: headache disorder; degenerative disc disease ("DDD") of the cervical spine; DDD of the lumbar spine; and Sjogren's disorder. *Id.* The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 22.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work, excluding climbing ladders, ropes, or scaffolds; can frequently climb ramps and stairs; can balance, stoop, kneel, couch or crawl; should not work with workplace hazards including unprotected heights or moving dangerous machinery; should not drive at night; should work in an indoor temperature controlled environment; should avoid even extreme temperatures that sometimes may be present in temperature controlled work environments including avoiding extreme exposure to chemical smells; should avoid work where the individual would be exposed to vibrating tools or work surfaces; should avoid work where the individual would be working under bright spotlights; should work in an environment where there are no loud or extremely loud noises, such as a rock concert or jack hammer; requires a moderate or quiet work environment; can occasionally reach overhead bilaterally; can frequently reach in all other directions as well as pushing or pulling bilaterally; and is limited to occasional reading or occasional use of screen tasks, like a television or computer screen as part of the work. R. 24.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 45. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including routing clerk, sorter, and final assembler. R. 47. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since July 15, 2020, the alleged onset date. R. 48.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized,

"the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (citation modified) (quoting *Biestek*, 587 U.S. at 103). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly assessing the medical opinions, (2) failing to fully account for Plaintiff's limitations in the RFC finding, and (3) improperly assessing Plaintiff's subjective symptoms. The Court finds that the ALJ's determinations were supported by substantial evidence. Accordingly, the Court affirms the Commissioner's decision.

### Analysis of the Medical Opinions

Plaintiff contends that the ALJ erred in her assessment of the medical opinions. Specifically, Plaintiff claims that the ALJ played doctor by rejecting the opinions of her treating providers, Dr. Royce and Dr. Arnold. The Court finds that the ALJ sufficiently considered the supportability and consistency factors and explained her decision.

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. Instead, the ALJ must consider factors such as supportability, consistency, relationship with the claimant, and length of the treatment relationship. 20 C.F.R. § 404.1520c(a), (c). Among these, supportability and consistency are the most important factors, and the ALJ is required to explain how she considered these two factors in her determination or decision. *Patrice W. v. Kijakazi*, No. 20 CV 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R.

3

§404.1520c(b)(2)). In assessing the supportability factor, a medical opinion is considered more persuasive "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c. In assessing the consistency factor, an ALJ should consider the consistency of the medical opinion with "the evidence from other medical sources and the nonmedical sources in the claim." *Id*. "[O]nce the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated [her] reasons— a very deferential standard that we have, in fact, deemed lax." *Crowell*, 72 F.4th at 816 (citation modified).

The ALJ sufficiently articulated her analysis of the supportability and consistency factors regarding Plaintiff's treating provider, Dr. Jeffrey Royce, a headache management specialist. Dr. Royce opined that Plaintiff could not perform even basic work activities during a headache, would need one to two unscheduled breaks in an eight-hour workday, would need to rest for two to six hours during an attack before returning to work, and would be absent from work at least four times a month. R. 1842-43. Dr. Royce additionally opined that Plaintiff would have good days and bad days and noted that "the fatigue of fibromyalgia post-COVID [was] pervasive." R. 1843. The ALJ found Dr. Royce's opinion unpersuasive because his findings were unsupported by his own treatment notes, which indicated that Botox injections reduced the frequency of Plaintiff's migraines to once a week and that Ubrelvy managed her breakthrough migraines within an hour without side effects. R. 39, 1942-43, 1948. Indeed, in February and March 2020, Plaintiff reported that Ubrelvy "works great" for her and that she did not need to repeat a dose. R. 745-46. The ALJ also found that the opinion was not consistent with the evidence in the record, which generally showed that Plaintiff's fatigue was manageable and did not limit her activities. R. 20, 38-39, 1521, 1529, 1881, 2111. The ALJ further noted that the record generally did not indicate a need for Plaintiff to rest due to her headaches. R. 27-28, 38, 746, 817.

Plaintiff contends that the ALJ was biased against Dr. Royce. Plaintiff particularly faults the ALJ for erroneously finding contradictions in Dr. Royce's treatment notes and misunderstanding notations that Plaintiff's condition was "stable." Regarding the ALJ's interpretation of Dr. Royce's notes that Plaintiff's condition was stable, the Court does not find that the ALJ misunderstood the notation but simply took it to indicate that Plaintiff's condition was not worsening and did not need adjustments in treatment. However, as to contradictions in Dr. Royce's treatment notes, the ALJ did appear to misread or interpret some of the medical records as contradictory. For example, the ALJ appeared to interpret observations of Plaintiff's headaches from neck tightness and jaw tension as undermining the migraine diagnosis, even though Plaintiff alleges she suffers from migraine and non-migraine headaches. R. 27. Additionally, based on a misreading, the ALJ stated that Dr. Royce's treatment notes regarding the frequency of Plaintiff's migraines after Botox was contradictory when the notations were in fact consistent with each other. *Id.* To this extent, the Court finds that the ALJ erred in her analysis of Dr. Royce's medical opinion but that such error was harmless. As stated above, the ALJ provided sufficient reasons for discrediting Dr. Royce's medical opinion, such as evidence of effective treatment, lack of evidence that Plaintiff needed extended periods of rest, and evidence that Plaintiff's condition did not worsen but was managed with treatment. Accordingly, the Court finds that the ALJ appropriately evaluated and sufficiently articulated her assessment of Dr. Royce's medical opinion.

4

The ALJ also found unpersuasive the medical opinion of Plaintiff's rheumatologist, Dr. Erin Arnold, who completed six questionnaires on Plaintiff's behalf. Dr. Arnold opined that Plaintiff's pain would frequently interfere with the attention and concentration needed to focus on even simple work tasks, she would be absent from work more than four days per month, and that she experienced severe fatigue and fever from Sjogren's Syndrome. R. 1845. She also opined that Plaintiff had marked limitations in activities of daily living, maintaining social functioning, and completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Id.* The ALJ found this opinion unpersuasive because it was inconsistent with Dr. Arnold's own treatment notes which indicated that Plaintiff's fatigue and symptoms from Sjogren's syndrome did not limit her daily activities. R. 40, 1881. Treatment notes also indicated that Plaintiff had no swollen or tender joints, nontender hands, normal posture, and gait. R. 40, 1883-84. Additionally, the ALJ observed that Dr. Arnold's opinion was inconsistent with the record which showed that Plaintiff could care for her three children, drive, and that her anxiety and ADHD symptoms were manageable with behavioral strategies and treatment. R. 41, 1141, 1156-57. The ALJ also cited treatment records indicating Plaintiff had normal perception, thought processes, and attentiveness. R. 41, 1143-44. Finally, the ALJ noted that it was a physician's assistant, not Dr. Arnold, who completed the paperwork on Plaintiff's functional limitations and that Dr. Arnold had not personally evaluated Plaintiff. R. 43, 1865, 1879. The ALJ explained the portions of Dr. Arnold's treatment records that did not support her own findings and the portion of the record that contradicted her opinion. Accordingly, the Court finds that the ALJ appropriately evaluated and sufficiently articulated her assessment of Dr. Arnold's opinion.

**RFC Finding**

Plaintiff contends that the ALJ failed to consider the totality of her limitations in formulating the RFC. Specifically, Plaintiff states that the ALJ did not consider how her headaches, mental impairments, fatigue, and vision difficulties would impact her ability to sustain full-time work.[1] The Court finds that the ALJ's RFC determination was supported by substantial evidence and sufficiently addressed Plaintiff's limitations.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct [her] own RFC finding without a proper medical ground and must explain how [she] has reached [her] conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (citation modified). Here, the ALJ has said enough to ensure that she considered the totality of Plaintiff's

---

[1] Plaintiff also claims that the ALJ's listing analysis, as to equivalency, was insufficient. [11], p. 13. However, this argument is undeveloped and therefore waived. "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)); *see Olivas v. Saul*, 799 F. App'x 389, 392 (7th Cir. 2019).

limitations and included all limitations supported by the record in formulating the RFC.

In this case, the ALJ found that that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other medical evidence in the record." R. 27. The ALJ discussed Plaintiff's history of migraines and headaches caused by neck and jaw clenching. As stated above, the ALJ cited medical records that indicated Plaintiff's migraines were largely controlled by Botox and medication. Regarding Plaintiff's headaches related to neck and jaw clenching, the ALJ pointed to treatment records and explained that her symptoms appeared to be responsive to "therapeutic treatments such as physical therapy, chiropractic care, and a course of trigger point injections." R. 31-32, 2503, 2548, 3695-704. As to Plaintiff's alleged mental impairments, the ALJ pointed to psychiatric notes documenting the effectiveness of medications on Plaintiff's focus and concentration. R. 37. As the Commissioner notes, the ALJ observed that "mental status examinations were normal, [P]laintiff's ADHD was well controlled, and [P]laintiff herself testified that her mental impairments did not limit her ability to work." [13], p. 13 (citing R. 20-22, 37, 40-41, 186). Regarding Plaintiff's reports that she needed frequent rest due to fatigue, the ALJ throughout her RFC analysis acknowledged that the medical evidence showed that Plaintiff experienced fatigue but that it did not interfere with her daily living activities. R. 25, 28, 38. The ALJ also noted that the medical evidence showed that Plaintiff could engage in activities such as exercising, walking, rowing, working as a real estate investor, parenting, and moving items. R. 39. Finally, the ALJ noted Plaintiff's history of vision complaints related to dry eyes stemming from Sjogren's syndrome. R. 34. However, the ALJ pointed to appointments in August 2020, March 2021, and April 2022 that noted Plaintiff's visual acuity was 20/20. R. 33-35. The ALJ noted that the record supported Plaintiff's allegations of dry eyes, but that it responded well to consistent treatment by using eye drops and taking Xiidra. R. 35, 37.

Plaintiff contends that the ALJ failed to fully account for limitations in the RFC by giving "no consideration how Plaintiff's headache disorder would, itself or in combination with other impairments, impede her ability to sustain on-task and attendance requirements of full-time work." [11], p. 13. However, the Court does not find that this is the case. After a thorough review of the extensive record, the ALJ formulated an RFC based on the limitations supported by the record and the effective treatment of Plaintiff's symptoms. For example, to address her headaches, the ALJ limited Plaintiff to working in environments without bright lights, loud noises, chemical smells, or hazards to accommodate Plaintiff's prior reports of photophobia, sonophobia, and occasional nausea while experiencing migraines. R. 38, 2427, 2686. Although the record indicated that Plaintiff's fatigue varied but did not limit her daily activities, the ALJ out of caution limited Plaintiff to non-hazardous environments. R. 39. Finally, in light of medical records that indicated prolonged screen use, temperature extremes, glaring lights, and night driving exacerbated Plaintiff's dry eye symptoms, the ALJ limited Plaintiff to working in environments without temperature extremes, hazards, or night driving. R. 38. In summary, the ALJ provided limitations as supported by the record and at times credited Plaintiff's statements. Accordingly, the Court finds that the ALJ's RFC finding sufficiently accounted for Plaintiff's combined limitations as supported by the record and was supported by substantial evidence. *Vang v. Saul*, 805 Fed. Appx. 398, 401-02 (7th Cir. 2020) (citation modified) ("An ALJ adequately supports [her] RFC determination when [she] considers all limitations supported by the record evidence and ties the record evidence to the limitations included in the RFC finding.").

6

## Subjective Symptoms

Plaintiff makes a general argument directed at the method used by the ALJ in making her credibility determination. Plaintiff particularly faults the ALJ's reliance on the lack of objective findings corroborating her pain allegations because "Plaintiff endured significant deficits that might not be susceptible to objective testing." [11], p. 15. The Court finds no error.

As an initial matter, contrary to Plaintiff's contention, it is not improper for an ALJ to consider objective evidence among other factors when assessing a plaintiff's symptom allegations, including pain. ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p, 2017 WL 5180304, at *3. First, the ALJ must "determine whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4. When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. *Id.* at *5-8; 20 C.F.R. § 404.1529(c). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (citation omitted). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009). Here, the ALJ's evaluation of Plaintiff's symptoms was adequately supported with evidence and explanation.

The ALJ considered a combination of objective evidence, Plaintiff's daily activities, medication, and course of treatment to assess Plaintiff's subjective symptoms. For example, while noting that the record lacked objective findings that corroborated Plaintiff's pain symptoms, the ALJ noted that Plaintiff's pain from headaches appeared to be controlled by a combination of Botox, Ubrelvy, and physical therapy. R. 27-29, 36, 745-46, 817, 1943, 1972, 2686. In assessing Plaintiff's reports that her Sjogren's syndrome, headaches, and fatigue limited her daily activities and required frequent rest, the ALJ found that the record did not indicate that such rest was needed and that Plaintiff had previously stated that her conditions did not limit her activities. R. 34, 38-40. The ALJ additionally found that Plaintiff's daily activities such as driving, shopping, household chores, handling a savings account, exercising, and caring for young children undermined her reports that she was more limited. R. 21, 38-39. Finally, as discussed above, the ALJ in her RFC analysis reviewed Plaintiff's history of headaches and eye symptoms and concluded that these conditions were generally controlled by a combination of Botox, Ubrelvy, physical therapy, and eye drops. The Court notes that Plaintiff does not point to what particular symptoms the ALJ failed to consider, but rather faults the ALJ for her methodology. However, the ALJ properly followed the guidelines in SSR 16-3p when evaluating Plaintiff's subjective symptoms as a whole by adhering to the two-step process and considering various types of evidence as required. Ultimately, after an extensive discussion of Plaintiff's symptoms, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent because they were not as limiting as alleged. R. 27. Accordingly, the Court finds that the ALJ did not err in her analysis of Plaintiff's subjective symptoms.

7

**CONCLUSION**

For the foregoing reasons, the Court affirms the Commissioner's decision.

Date: April 10, 2026          ENTER:

_____
United States Magistrate Judge